1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                     CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| DOUGLAS HERNANDEZ, as an individual and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> PEI WEI ASIAN DINER, LLC, a Limited Liability Company; and DOES 1 to 100, inclusive, <br><br> Defendants. | CASE NO. 8:17-cv-00679-JLS-JCG <br><br> **ORDER (1) GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 46); AND (2) SETTING A FINAL FAIRNESS HEARING** |

20
21
22
23
24
25
26
27
28

1

Before the Court is a Joint Motion for Preliminary Approval of Class Action Settlement.  (Mot., Doc. 46; Mem., Doc. 47.)  The parties ask the Court to (1) preliminarily approve the terms of the Settlement Agreement; (2) certify the proposed Class for settlement purposes only; (3) approve Phoenix Settlement Administrators as the Settlement Administrator; (4) approve the form and content of the proposed Class Notice; (5) appoint as Class Counsel Larry W. Lee of Diversity Law Group, P.C., and Edward W. Choi of Law Offices of Choi & Associates; (6) appoint Hernandez as Class Representative; and (7) schedule a final fairness hearing.  (Mot. at 2.)  The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.  Accordingly, the hearing set for August 24, 2018, at 2:30 p.m., is VACATED.  For the following reasons, the Court GRANTS the Motion and sets a Final Fairness Hearing for January 11, 2019, at 2:30 p.m.

## I.  BACKGROUND

On April 14, 2017, Plaintiff Douglas Hernandez filed this putative class action on behalf of himself and all other similarly situated current and former non-exempt employees of Defendant Pei Wei's Asian Diner, alleging claims for violations of the California Labor Code, including (1) failure to provide meal periods, Cal. Lab. Code § 226.7; (2) failure to provide complete and accurate wage statements, Cal. Lab. Code § 226(a); (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (4) civil penalties under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698. (Compl. ¶¶ 32–51, Doc. 1.)

On June 9, 2017, Defendant filed a Motion to Compel Arbitration and Stay Action or, alternatively Motion to Dismiss, which Plaintiff opposed.  (Docs. 16, 24.)  The Court denied the Motion to Dismiss, held in abeyance the Motion to Compel Arbitration, stayed the class claims pending the Supreme Court's resolution of *Morris v. Ernst & Young*, and declined to stay Plaintiff's PAGA claim.  (*See* Order re: MTD, Doc. 35.)  Thereafter, the

parties engaged in discovery by serving their initial disclosures, propounding and responding to written discovery, engaging in "extensive" discovery conferences, and taking depositions.  (Choi Decl. ¶ 8, Doc. 46-1; Lee Decl. ¶ 12, Doc. 46-2.)

On April 3, 2018, the parties participated in a private mediation.  (*Id.* ¶ 9.) On April 9, 2018, Plaintiff filed a notice of settlement, and the Court stayed the matter pending preliminary approval.  (Notice of Settlement, Doc. 44.)  Then, on June 8, 2018, the parties filed the instant Motion.

The Settlement defines the Class as "all current and former California non-exempt employees of Defendant who worked more than 5 hours in any work shift any time during the period from April 14, 2013 through the Preliminary Approval Date."  (Settlement Agreement ("SA") ¶ 4, Doc. 47-1.)  The parties estimate that there are 2,370 Class Members.  (*Id.*)

The Settlement provides for a full-distribution, non-reversionary Gross Settlement Fund of $600,000.  (*Id.* ¶ 17.)  After deducting attorneys' fees, litigation and administration costs, an incentive award, and the PAGA disbursement, the remaining "Net Settlement Amount," an estimated $341,250, will be used to provide settlement payments to each Class Member based on the number of compensable workweeks[1] that each individual Class Member worked.  (*Id.* ¶¶ 19, 50(a)–(f).)  Unless a Class Member timely and properly opts out of the Settlement, she will be entitled to her individual settlement payment.  (*Id.* ¶ 50(a).)

The Settlement provides that Class Counsel will request an award of attorneys' fees of 1/3 of the Gross Settlement Fund, or $200,000, and costs not to exceed $20,000.  (*Id.* ¶ 50(d).)  The Settlement further provides that Plaintiff may apply for an incentive award not to exceed $7,500.00.  (*Id.* ¶ 50(c).)  The Settlement Administrator will also be paid from the Gross Settlement Fund for the reasonable costs of administration up to $20,000.  (*Id.* ¶

---

[1] "Compensable workweeks" is defined as "the number calculated by (a) determining the total number of days … Class Members performed work for Defendant … during [the Class Period]; and (b) then dividing that number by seven."  (SA ¶ 10.)

50(f).)  Additionally, the parties have allocated $15,000 to settlement of the PAGA claim, 75% of which shall go to the LWDA and 25% of which shall be part of the Net Settlement Amount distributed to the Class.  (*Id.* ¶ 50(e).)

In return for the individual settlement payments, Class Members fully release and discharge "all causes of action and factual or legal theories that were alleged in the operative complaint or reasonably could have been alleged based on the facts and legal theories contained in the operative complaint … " for the applicable Class Period.   (*Id.* ¶¶ 28, 43.)  Plaintiff also releases any and all claims he may have against Defendant.  (*Id.* ¶ 44.)  The "Released Parties" include Defendant and its officers, directors, managers, representatives, subsidiaries, affiliates, successors, and assigns.  (*Id.* ¶ 29.)

The Settlement also enumerates the process for Class Notice.  Defendant will provide the Settlement Administrator with the name, address, telephone number, Social Security number, and information regarding shifts worked during the Class Period.  (*Id.* ¶¶ 7, 49(a).)  Within fourteen days of receiving this information, the Settlement Administrator will mail a "Notice Packet"[2] to all Class Members by first class mail.  (*Id.* ¶¶ 20, 49(b), (d).)  If a new address is obtained by way of a returned Notice, the Settlement Administrator will promptly forward the original Notice to the updated address via first-class mail.  (*Id.* ¶ 49(b))  If a Notice is returned as undeliverable and without a forwarding address, the Settlement Administrator will perform a "skiptrace" search to obtain an updated address.  (*Id.* ¶ 49(c).)  Class Members will have 45 days from the date of the postmark on the return mailing envelope to seek exclusion from the Settlement or object to its terms.  (*Id.* ¶¶ 30, 49(e).)  Class Members who fail to timely object to the Settlement are deemed to have waived any objections.  (*Id.* ¶ 49(e).)

On July 11, 2018, the Court requested supplemental briefing regarding (1) how Plaintiff calculated Defendant's maximum potential liability, and (2) the experience of the

---

[2] The Notice Packet contains the Class Notice as well as information regarding the individual Class Member's employment dates, estimated individual settlement payment, and instructions for submitting a request for exclusion or objection.  (SA ¶ 49(d).)

proposed Settlement Administrator, Phoenix Settlement Administrators ("Phoenix").  (*See* Order re: Suppl. Briefing, Doc. 48.)  Plaintiff filed a timely response.  (Suppl. Brief, Doc. 49.)

## II.   <u>CONDITIONAL CERTIFICATION OF THE CLASS</u>

Plaintiff asks the Court to conditionally certify the proposed Class for settlement purposes under Rule 23(a) and 23(b)(3).  (Mem. at 3–7.)  "A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation."  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

1     Fed. R. Civ. P. 23(a).

2     "Rule 23 does not set forth a mere pleading standard. A party seeking class

3 certification must affirmatively demonstrate his compliance with the Rule—that is, he

4 must be prepared to prove that there are *in fact* sufficiently numerous parties, common

5 questions of law or fact, etc." *Dukes*, 564 U.S. at 350. This requires a district court to

6 conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of

7 the plaintiff's underlying claim." *Id.* at 350–51.

8     "Second, the proposed class must satisfy at least one of the three requirements listed

9 in Rule 23(b)." *Id*. at 345. The Court may certify a class under Rule 23(b)(3) if "the court

10 finds that the questions of law or fact common to class members predominate over any

11 questions affecting only individual members, and that a class action is superior to other

12 available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

13 23(b)(3).

14

15     **A.**     **The Proposed Class Meets All Rule 23(a) Requirements**

16         **1.**     **Numerosity**

17     Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

18 impracticable." Fed. R. Civ. P. 23(a)(1). The parties estimate that there are a total of

19 2,370 Class Members. (SA ¶ 4.) Numerosity is plainly met for the proposed Class.

20         **2.**     **Commonality**

21     Rule 23(a)(2) requires that "there are questions of law or fact common to the class."

22 Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class

23 members have suffered the same injury." *Dukes*, 564 U.S. at 349–50 (citation and internal

24 quotation marks omitted). The plaintiff must allege that the class' injuries "depend upon a

25 common contention" that is "capable of classwide resolution." *Id.* at 350. In other words,

26 the "determination of [the common contention's] truth or falsity will resolve an issue that

27 is central to the validity of each one of the claims in one stroke." *Id.* "What matters to

28

1    class certification . . . is not the raising of common questions—even in droves—but, rather

2    the capacity of a classwide proceeding to generate common *answers* apt to drive the

3    resolution of the litigation." *Id.* (internal quotation marks and citation omitted).

4         Here, Plaintiff's claims center on Defendant's alleged failure to provide meal breaks

5    to employees who worked shifts of five or more hours.  (Mem. at 5; *see* Compl. ¶¶ 32–51.)

6    Questions such as whether or not Defendant provided meal breaks to each Class Member

7    can be answered by reference to uniformly applied policies and practices.  *See Scott v. HSS*

8    *Inc.,* No. 8:14-CV-01911-JLS (RNB), 2017 WL 7049524, at *4 (C.D. Cal. Dec. 18, 2017)

9    (approving certification of a proposed class for settlement purposes based on similar

10   claims).  Plaintiff has therefore satisfied the commonality requirement.

### 3.    Typicality

12        Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be]

13   typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[U]nder the

14   rule's permissive standards, representative claims are 'typical' if they are reasonably

15   coextensive with those of absent class members; they need not be substantially identical."

16   *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting

17   *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *rev'd on other grounds*,

18   564 U.S. 338 (2011).  As to the representative, "[t]ypicality requires that the named

19   plaintiffs be members of the class they represent."  *Id.* (citing *Gen. Tech. Co. of Sw. v.*

20   *Falcon*, 457 U.S. 147, 156 (1982)).  The commonality, typicality, and adequacy-of-

21   representation requirements "tend to merge" with each other.  *Dukes*, 564 U.S. at 349 n.5

22   (citing *Falcon*, 457 U.S. at 157–58 n.13).

23        Here, Plaintiff asks that he be named Class Representative.  (Mem. at 4.)  Plaintiff

24   falls within the definition of the proposed Class, and his claims, like those of his fellow

25   Class Members, are based on Defendant's alleged failure to provide meal periods to

26   employees who worked shifts of five or more hours.  (Hernandez Decl. ¶¶ 2–5, Doc. 46-3.)

27   Thus, typicality is met.

1

### 4. Adequacy

2      Rule 23(a)(4) permits certification of a class action only if "the representative

3  parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

4  23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named

5  plaintiffs and their counsel have any conflicts of interest with other class members and

6  (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of

7  the class?"  *Hanlon*, 150 F.3d at 1020.

8      As discussed above, Plaintiff's claims arise out of the same set of facts as the claims

9  for the proposed Class, and his interest in obtaining the maximum recovery is coextensive

10  with the interests of the Class Members.  Plaintiff has already expended time and effort to

11  prosecute this case and protect the interests of the proposed Class, and the Court finds no

12  sign of a potential conflict of interest between Plaintiff and the Class Members he seeks to

13  represent.  (*See* Hernandez Decl. ¶ 6.)  Accordingly, the Court concludes that Plaintiff is an

14  adequate class representative.

15      As to the adequacy of Plaintiff's Counsel, the Court must consider "(i) the work

16  counsel has done in identifying or investigating potential claims in the action;

17  (ii) counsel's experience in handling class actions, other complex litigation, and the types

18  of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv)

19  the resources that counsel will commit to representing the class."  Fed. R. Civ. P.

20  23(g)(1)(A).  Here, Plaintiff asks that the Court appoint Larry W. Lee of Diversity Law

21  Group, P.C., and Edward W. Choi of Law Offices of Choi & Associates as Class Counsel.

22  (Mem. at 11.)  Lee and Choi each provided declarations describing their extensive

23  experience in litigating wage and hour claims on a class basis.  (Choi Decl. ¶ 18; Lee Decl.

24  ¶¶ 9–11.)  Moreover, they identify favorable results they have obtained in many of these

25  actions, including class certification, final approval of class settlements, and significant

26  arbitration awards.  (Choi Decl. ¶ 18; Lee Decl. ¶ 11.)  Based on this past experience and

27  the work of Plaintiff's Counsel in this action up to this point, the Court concludes that they

28

1  have satisfied the adequacy requirement.  The Court therefore appoints Larry W. Lee of

2  Diversity Law Group, P.C., and Edward W. Choi of Law Offices of Choi & Associates as

3  Class Counsel in this action.

4

5  **B.**  **The Proposed Class Meets the Rule 23(b) Requirements**

6  Plaintiff seeks certification under Rule 23(b)(3).  (Mem. at 6.)  For the reasons set

7  forth below, the Court holds that certification of the proposed Class is appropriate under

8  Rule 23(b)(3).

9  Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that

10  the questions of law or fact common to class members *predominate* over any questions

11  affecting only individual members, and [2] that a class action is *superior* to other available

12  methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. R. 23(b)(3)

13  (emphases added).  When examining a class that seeks certification under Rule 23(b)(3),

14  the Court may consider:

15  (A) the class members' interests in individually controlling the prosecution or

16  defense of separate actions;

17

18  (B) the extent and nature of any litigation concerning the controversy already begun

19  by or against class members;

20

21  (C) the desirability or undesirability of concentrating the litigation of the claims in

22  the particular forum; and

23

24  (D) the likely difficulties in managing a class action.

25  *Id*.  The Court finds that Plaintiff's proposed Class satisfies both the predominance

26  and superiority requirements.

27

28

1        **1**.   **Predominance**

2      "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship

3 between the common and individual issues in the case, and tests whether the proposed

4 class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S.*

5 *Sec. Associates, Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (citations and internal quotation

6 marks omitted). "Rule 23(b)(3) requires [only] a showing that questions common to the

7 class predominate, not that those questions will be answered, on the merits, in favor of the

8 class." *Id.* (alterations in original).

9      Here, as discussed above, Class Members' claims turn on whether Defendant

10 provided meal periods and adequately compensated employees for missed meal periods.

11 This common question and the common legal remedies will predominate in this action.

12      **2.**   **Superiority**

13      The Court further finds that a class action would be a superior method of

14 adjudicating Plaintiff's claims for the proposed Class. "The superiority inquiry under Rule

15 23(b)(3) requires determination of whether the objectives of the particular class action

16 procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This

17 determination necessarily involves a comparative evaluation of alternative mechanisms of

18 dispute resolution." *Id.* Here, each member of the proposed Class pursuing a claim

19 individually would burden the judicial system and run afoul of Rule 23's focus on

20 efficiency and judicial economy. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d

21 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class

22 representation would further the goals of efficiency and judicial economy."). Further,

23 litigation costs would likely exceed potential recovery if each Class Member litigated

24 individually. "Where recovery on an individual basis would be dwarfed by the cost of

25 litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v.*

26 *Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted).

27

28

Considering the non-exclusive factors under Rule 23(b)(3)(A)–(D), the Court finds that Class Members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing the class action do not outweigh the desirability of concentrating this matter in one litigation.  *See* Fed. R. Civ. P. 23(b)(3)(A), (C), (D).  Therefore, the Court finds that the proposed Class may be certified under Rule 23(b)(3).

### C.    Rule 23(g) – Appointment of Class Counsel

Under Rule 23(g), "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  As already discussed, the Court is satisfied that Plaintiff's Counsel is adequate and thus may be appointed as Class Counsel in this case.

Having found that the proposed Class satisfies the remaining elements of Rule 23(a), the Court conditionally certifies the Class for settlement purposes only.

### III.    PRELIMINARY APPROVAL OF CLASS SETTLEMENT

To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).  In turn, review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing.  Federal Judicial Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[3] and the reaction of the class members to the

---

[3] This factor does not apply in this case.

proposed settlement." *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (quotation marks and citation omitted). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (quotation marks and citations omitted).

At this preliminary stage and because class members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary . . . ." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of *possible* approval

1  . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)

2  (internal quotation marks and citation omitted) (emphasis added); *see also Acosta v. Trans*

3  *Union*, *LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary

4  approval is appropriate, the settlement need only be *potentially* fair, as the Court will make

5  a final determination of its adequacy at the hearing on the Final Approval, after such time

6  as any party has had a chance to object and/or opt out.") (emphasis in original).

7       In evaluating all applicable factors below, the Court finds that the Settlement should

8  be preliminarily approved.

9

10      **A.  Strength of Plaintiff's Case**

11       The principal claims at issue here involve Defendant's alleged failure to provide

12  meal periods as required under the California Labor Code.  While Plaintiff is confident he

13  would prevail on the merits of his claims, Defendant contends that its policies and

14  practices fully complied with California law.  (Mem. at 2, 6–7.)  Moreover, Defendant

15  contends that Plaintiff and the other Class Members entered into binding arbitration

16  agreements that included a class action waiver and would prevent class-wide resolution of

17  the instant claims.  (*Id.* at 2, 12–13.)   The Court finds that given these potential obstacles,

18  this factor weighs in favor of granting preliminary approval.

19

20      **B.  Risk, Complexity, and Likely Duration of Further Litigation**

21       Plaintiff argues that continued litigation would have involved "significant legal and

22  factual battles that otherwise may have prevented the Class from obtaining any recovery at

23  all." (Mem. at 12.)  Although Plaintiff emphasizes the meritorious nature of the class

24  claims, he also raises his concern that the cost of a trial and appeals would dwarf any

25  potential recovery. (*Id.* at 12, 14.)   Moreover, Plaintiff points to the uncertainty regarding

26  the enforceability of the class action waivers that existed at the time the parties negotiated

27  the settlement. (*Id.* at 12.)  Settlement eliminates the risks inherent in Defendant's pending

28

1  Motion to Compel Arbitration, anticipated motion for summary judgment, a potential trial,

2  and subsequent appeals, and it may provide the last opportunity for the Class to obtain

3  relief.  This factor therefore weighs in favor of granting preliminary approval.  *See Nat'l*

4  *Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In

5  most situations, unless the settlement is clearly inadequate, its acceptance and approval are

6  preferable to lengthy and expensive litigation with uncertain results." (citation omitted)).

7

8      **C.  Risk of Obtaining and Maintaining Class Certification**

9         Although the parties did not specifically brief this factor, the Court is satisfied that

10  there is some risk to Plaintiff's ability to obtain and maintain class certification if the

11  litigation were to proceed.  First, as discussed above, Plaintiff and other Class Members

12  signed an arbitration agreement that purported to waive their ability to bring class claims

13  against Defendant.  Moreover, even if Plaintiff were able to show that the class action

14  waiver was unenforceable, a task made more difficult by *Epic Systems Corp. v. Lewis,* 138

15  S.Ct. 1612 (2018), Defendant likely would have argued that questions concerning whether

16  an employee received his meal periods require a fact-specific examination of that

17  employee's particular circumstances.  Therefore, the Court finds that Plaintiff significant

18  risk in attempting to proceed on a class basis and that this factor weighs in favor of

19  preliminary approval.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir.

20  2009) (finding that the risk of decertification was "not so minimal that this factor could not

21  weight in favor of the settlement").

22

23      **D.  Amount Offered in Settlement**

24         The Court finds that the amount offered in settlement is reasonable.  The Settlement

25  provides for a non-reversionary Gross Settlement Fund of $600,000, which is a substantial

26  benefit to the Class.  (SA ¶ 17.)  This amount represents approximately 33.3% of

27

28

Defendant's maximum potential liability of $1.8 million, as calculated by Class Counsel.[4]
(Supp. Mem. at 1.)  A "settlement amounting to only a fraction of the potential recovery
does not per se render the settlement inadequate or unfair," *In re Mego Fin. Corp. Sec.
Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal quotation marks and citation omitted),
and this percentage equals or surpasses the recovery in other wage and hour class actions.
*See Scott*, 2017 WL 7049524, at *6 (approving a wage and hour settlement that constituted
21% of the defendant's maximum potential liability); *Greko v. Diesel U.S.A., Inc.*, No. 10-
CV-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (finding settlement
amount of a wage and hour class action that constituted 24% of estimated damages to be
reasonable and beneficial to the class); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068
MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of a wage and
hour class action that constituted 25% to 35% of the claimed damages to be reasonable),
*aff'd*, 331 F. App'x 452 (9th Cir. 2009).  Accordingly, in considering the difficulties of
potential recovery, the Court finds that the amount offered in the Settlement weighs in
favor of preliminary approval.

The allocation of the Gross Settlement Fund also appears fair, adequate, and
reasonable. Individual settlement payments are determined by the number of meal period-
eligible shifts that each Class Member worked during the Class Period.  (SA ¶¶ 10, 50(b).)
Accordingly, the Settlement provides each class member with a *pro rata* share of the
common fund.  *See In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1
(N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on
the extent of their injuries is generally reasonable.").  This weighs in favor of preliminary
approval.

---

[4] Class Counsel calculated Defendant's meal period exposure by analyzing a representative
sample of time entries for missed meal periods, extrapolating the violation rate across the entire
class, and reducing the total amount of liability by the amount of meal break premiums that
Defendant did pay.  (Supp. Mem. at 1.)  Class Counsel calculated Defendant's wage statement
exposure by calculating the number of wage statements at issue during the Class Period.  (*Id.* at 1–
2.)

Finally, the Settlement also appears fair, adequate, and reasonable in light of the claims released by Plaintiff and the Class Members.  Each Class Member will release only those claims that were alleged in the Complaint or reasonably could have been alleged based on the factual and legal theories therein.  (SA ¶ 28.)  The scope of this release weighs in favor of preliminary approval.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." (internal quotation marks and citation omitted)).

**1. The Court's Concerns**

 Although the Court does not approve attorneys' fees and the incentive award at this stage, the Court raises its concerns with the proposed requests.  Class Counsel represents that they will seek the Court's approval for attorneys' fees totaling up to 33% of the Gross Settlement Fund, or $200,000.00.  (SA ¶ 50(d).)  The benchmark for fees in the Ninth Circuit is 25% of the common fund.  *See In re Bluetooth*, 654 F.3d at 942.  Before final approval, the court will "scrutinize closely the relationship between attorneys' fees and benefit to the class" and will not "award[] unreasonably high fees simply because they are uncontested." *Id.* at 948 (internal quotation marks and citation omitted).  Class Counsel must therefore make a sufficient showing justifying any upward departure from the Ninth Circuit's fees benchmark to be awarded 33% of the Gross Settlement Fund.

Separately, the Settlement provides that Plaintiff may make seek an incentive award of up to $7,500.00, which would be in addition to any *pro rata* distribution he receives as a Class Member.  (SA ¶ 50(c).)  The Ninth Circuit has instructed district courts to "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  As the Ninth Circuit has noted, a "significant disparity between the

incentive awards and the payments to the rest of class members" risk creating a conflict of interest.  *Id.*  Accordingly, in his request for an incentive payment, Plaintiff must justify why the incentive award is reasonable, especially when set against the actual or anticipated recovery of Class Members.

### E.  Stage of the Proceedings and Extent of Discovery Completed

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Discovery can be both formal and informal.  *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JLS (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011).  Here, the parties exchanged their initial disclosures and written discovery, conducted several meet-and-confer discovery conferences, and took depositions.  (Choi Decl. ¶ 8; Lee Decl. ¶ 12.)  Defendant also provided Plaintiff with class-wide data to allow Plaintiff to perform a damages analysis.  (Choi Decl. ¶ 9; Suppl. Brief at 1.)  Given these facts, the Court concludes that the parties possess sufficient information to make an informed settlement decision.  *See In re Mego Fin.*, 213 F.3d at 459 (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but class counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services.").  Accordingly, this factor weighs in favor of granting preliminary approval.

### F.  Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted).  "On the other hand, recognizing the potential conflict of interest between attorneys and the class they represent, the Court should not blindly follow

counsel's recommendations, but give them appropriate weight in light of all factors surrounding the settlement."  *Boyd v. Bechtel Corp.,* 485 F.Supp. 610 (N.D. Cal. 1979). As discussed above, Class Counsel is experienced and knowledgeable in this area of the law, and they have endorsed the Settlement as fair, reasonable, and adequate.  (Choi Decl. ¶ 12; Lee Decl. ¶ 13.)  The Court finds that the presumption of reasonableness should apply; thus, this factor favors preliminary approval.

### G.  Reaction of Class Members to Proposed Settlement

Plaintiff has not provided evidence of the Class Members' reactions to the Settlement.  However, the Court recognizes that the lack of such evidence is not uncommon at the preliminary approval stage.  Before the final fairness hearing, Class Counsel shall submit a sufficient number of declarations from Class Members discussing their reactions to the Settlement.  In addition, a small number of objections at the time of the fairness hearing may raise a presumption that the Settlement is favorable to the Class. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043.

### H.  Signs of Collusion

The Court finds no signs, explicit or subtle, of collusion between the parties.  Of course, before final approval, the court will "scrutinize closely the relationship between attorneys' fees and benefit to the class" and will not "award[] unreasonably high fees simply because they are uncontested."  *In re Bluetooth*, 654 F.3d at 948 (internal quotation marks and citation omitted).  The Court will also ultimately determine whether Plaintiff's requested incentive award is justified by the circumstances of this case.  Notably, unawarded amounts will remain in the common fund for the benefit of the Class Members. The Court also notes that the Settlement is the result of a mediation held before a private mediator, which "is an additional factor that supports the argument that [the agreement] is

not collusive." *Lee v. JPMorgan Chase & Co.*, No. SACV-13-511-JLS (JPRx), 2015 WL 12711659, at *6 (C.D. Cal. Apr. 28, 2015).

Considering all of the factors together, the Court preliminarily concludes that the settlement is fair, reasonable, and adequate.

## IV.   APPROVAL OF THE PROPOSED CLAIMS ADMINISTRATOR

The parties agreed to appoint Phoenix as the Settlement Administrator in this action, subject to the Court's approval.  (SA ¶ 49.)  Plaintiff has provided sufficient documentation of Phoenix's experience and competence in carrying out the duties of a settlement administrator.  (Lawrence Decl., Doc. 49-1.)  Moreover, other district courts have approved Phoenix as the settlement administrator in similar class actions.  *Morgret v. Applus Techs., Inc.,* No. 1:13-CV-01801-JLT, 2015 WL 1012576, at *10 (E.D. Cal. Mar. 5, 2015); *Martin v. Legacy Supply Chain Servs. II, Inc.,* No. 3:16-CV-02471-WQH (BLM), 2018 WL 828131, at *3 (S.D. Cal. Feb. 12, 2018).  Accordingly, the Court approves Phoenix as the Settlement Administrator in this action.

## V.   PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND METHOD

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). However, actual notice is not required.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

Pursuant to the Settlement, Defendant will provide the Settlement Administrator with the name, address, telephone number, Social Security number, and information regarding shifts worked during the Class Period.  (SA ¶¶ 7, 49(a).)  Within fourteen days of receiving this information, the Settlement Administrator will mail a Notice Packet to all Class Members by first-class mail.  (*Id.* ¶ 49(b).)  If a new address is obtained by way of a

returned Notice, the Settlement Administrator will promptly forward the original notice to the updated address via first-class mail.  (*Id.*)  If a Notice is returned as undeliverable and without a forwarding address, the Settlement Administrator will perform a "skiptrace" search to obtain an updated address.  (*Id.* ¶ 49(c).)  Class Members will have 45 days from the date of the postmark on the return mailing envelope to seek exclusion from the Settlement or object to its terms.  (*Id.* ¶¶ 30, 49(e).)

The Supreme Court has found notice by mail to be sufficient if the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Sullivan v. Am. Express Publ'g Corp.*, No. SACV 09-142-JLS (ANx), 2011 WL 2600702 at *8 (C.D. Cal. June 30, 2011) (quoting *Mullane*). The Court finds that the proposed procedure for class notice satisfies this standard.

Plaintiff has provided the Court with a copy of the proposed Notice.  (Class Notice, Doc. 47-1.)  Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  The proposed Notice includes this necessary information, but the Court requires the parties to make the following modifications:

- Eliminate any reference to filing a written objection with the Court in the "Your Legal Rights and Options in this Settlement" Box.
- Under Sections 12 ("How do I get out of the Settlement?") and 15 ("How do I tell the Court if I don't like the Settlement?"), the Court requires that requests for exclusion and objections should be sent to Class Counsel, rather than the Settlement Administrator.  Class Counsel are responsible for disseminating the

20

objections/requests to the Settlement Administrator and for filing, in connection with Plaintiff's motion for final approval, any objections along with a response to such objections.

- Under Section 15 ("How do I tell the Court if I don't like the Settlement?"), the Notice must clearly set forth that the motion for attorneys' fees, costs, and Plaintiff's incentive award will be filed at least 15 days before the response deadline so Class Members have the opportunity to review and object to the fees, cost, and award requests.  The Notice should also clearly indicate the date by which Class Counsel will file this motion with the Court.

Subject to the changes discussed above, the Court approves the form and method of class notice.  The Court ORDERS the parties to file a revised version of the Notice **within ten (10) days** of this Order.

Finally, the Court requires that any motion for attorneys' fees, costs, and service payments be filed with the Court no later than 15 days before the latest exclusion deadline. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010). Plaintiff shall file his motion for final approval no later than Friday, December 14, 2018, including a brief responding to any submitted objections and otherwise summarizing the Class Members' participation in the Settlement to date.

Finally, the Court notes that its jurisdiction over this matter arises in part from the Class Action Fairness Act.  (*See* Compl. ¶ 1.)  In their papers for final approval of the Settlement, the parties must also include a declaration reflecting that they provided appropriate notice to relevant state and federal authorities per the terms of 28 U.S.C. § 1715(b) at least 90 days prior to the date for the final fairness hearing.  28 U.S.C. § 1715(d).  *True v. Am. Honda Motor Co*., 749 F. Supp. 2d 1052, 1059 n.5 (C.D. Cal. 2010) (recognizing that the Class Action Fairness Act "requires that notice [of a proposed settlement] be sent to 'the appropriate State official of each State in which a class member resides and the appropriate Federal official.'" (quoting 28 U.S.C § 1715(b)).

## VI.   CONCLUSION

For the reasons discussed above, the Court (1) conditionally certifies the Class for settlement purposes only, (2) preliminarily approves the Settlement, (3) names Douglas Hernandez as Class Representative, (4) names Edward Choi and Larry Lee as Class Counsel, (5) approves Phoenix as the Settlement Administrator, and (6) conditionally approves the form and content of class notice, subject to the changes requested above and the Court's approval of the revised Notice.

The Court sets a final fairness hearing for **Friday, January 11, 2019, at 2:30 p.m.**, to determine whether the Settlement should be finally approved as fair, reasonable, and adequate to Class Members.  Plaintiff shall file his motion for final approval no later than **Friday, December 14, 2018**.  Class Counsel and Plaintiff shall file their applications for fees, costs, and incentive payment **no later than 15 days before** the exclusion deadline. The Court reserves the right to continue the date of the final fairness hearing without further notice to Class Members.

DATED: August 22, 2018

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE